IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:23-CV-00593-DGK |
| ) | |
| THE KANSAS CITY SOUTHERN ) | |
| RAILWAY COMPANY and ) | |
| CANADIAN PACIFIC KANSAS ) | |
| CITY LIMITED, ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

This is a declaratory judgment action brought by Plaintiff Union Pacific Railroad Company ("UP") against Defendants the Kansas City Southern Railway Company ("KCS") and Canadian Pacific Kansas City Limited ("CPKC") (collectively, "Defendants") to enforce the haulage terms of a 1988 agreement between the parties. The parties dispute whether the issue concerns a merger condition or an independent contractual agreement between the parties. Defendants maintain it constitutes a merger condition, making the Surface Transportation Board ("STB")—the agency vested with exclusive power over railroad mergers and acquisitions—the correct forum to resolve the issue. Plaintiff maintains this is a contractual dispute properly before the Court. The same jurisdictional question is pending before the STB.

Now before the Court are Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), ECF No. 8, and Defendants' motion to stay the case pending the Court's ruling on the motion to dismiss, ECF No. 18. For the following reasons, Defendants' motion to dismiss is GRANTED, and Defendants' motion to stay the case is DENIED AS MOOT. This case is DISMISSED WITHOUT PREJUDICE.

**Standard**

Federal Rule of Civil Procedure 12(b)(1) requires the Court to dismiss a complaint if it lacks subject matter jurisdiction to hear a dispute. In deciding a Rule 12(b)(1) motion, the Court "must distinguish between a 'facial attack' and a 'factual attack.'" *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). Here, Defendants make a facial attack on the Court's subject matter jurisdiction. Thus, "the [C]ourt restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (quoting *Osborn*, 918 F.2d at 729 n.6). To survive a 12(b)(1) motion, the party asserting jurisdiction has the burden of proving jurisdiction. *VS Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

While a 12(b)(1) motion challenges the Court's ability to hear a case, a 12(b)(6) motion tests the legal sufficiency of the complaint. A complaint may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, the Court construes it liberally and draws all reasonable inferences from the facts in Plaintiff's favor. *Monson v. Drug Enf't Admin.*, 589 F.3d 952, 961 (8th Cir. 2009).

**Background**

The following facts are relevant to the pending motion to dismiss.[1]

---

[1] In ruling on the motion, the Court considered facts alleged in Plaintiff's Complaint, documents necessarily embraced by the Complaint, including filings in the parallel proceeding before the STB, as well as prior STB and ICC orders (matters of public record) relevant to this case. *See Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (Courts may consider matters that are necessarily embraced by the pleadings, items subject to judicial notice, and matters of public record without converting a motion to dismiss into a summary judgment motion.).

UP-MKT Merger

In 1986, UP and its affiliate requested approval from the Interstate Commerce Commission ("ICC")—the predecessor agency to the STB[2]—to acquire the Missouri-Kansas-Texas Railroad Company ("MKT"). The request raised anticompetitive concerns for the railway industry. Accordingly, ICC approved the merger application subject to the condition UP grant another rail carrier sufficient rights to "operate in the Omaha/Council Bluffs-Kansas City corridor, with a further ability to move the grain traffic originating in this area to the Gulf." UP complied with the merger condition by granting the Kansas City Southern Railway Company ("KCS") rights to operate in the Omaha/Council Bluff-Kansas City corridor (the "North End"), with ancillary rights "between Beaumont and Houston/Galveston" (the "South End"). UP and KCS reduced their agreement to writing in the July 25, 1988, Term Sheet (the "Term Sheet"). The Term Sheet provides that grain traffic "originating or received in interchange on KCS' North End [R]ights as well as grain traffic interchanged to KCS at Kansas City, and grain traffic originated by KCS at or south of Kansas City shall be eligible to move via the haulage rights" (the South End Rights). The ICC approved the Term Sheet as a condition of the UP-MKT merger. *See* ICC Term Sheet Approval Order, ECF No. 9-2 (the "1988 Order").

CP-KCS Merger

In 2023, Canadian Pacific ("CP") moved to acquire KCS. The STB recognized the merger would increase the competitiveness of routes and would "allow the new carrier [created by the merger] to provide single-line service . . . by eliminating the need for their customers to interchange

---

[2] For purposes of this Order, the ICC and STB are interchangeable agencies. *See Grantwood Vill. v. Missouri Pac. R. Co.*, 95 F.3d 654, 656 n.2 (8th Cir. 1996) (stating Congress abolished the ICC as a sperate agency in 1996 whereby its functions were taken over by the STB).

in Kansas City." The STB approved the merger, and on April 14, 2023, CP and KCS merged to form Canadian Pacific Kansas City Limited ("CPKC").

The Disputed Shipment

In April 2023, after the CP-KCS merger, a major grain shipper sought to move grain from North Dakota to Houston. CPKC moved the grain from North Dakota to Beaumont via their new single-line route that bypassed interchange in Kansas City. Once in Beaumont, CPKC gave the grain to UP to haul from Beaumont to Houston via the South End rights (granted to KCS in the UP-MKT merger). UP moved the grain from Beaumont to Houston to avoid harming the third-party shipper but objected to further use of the South End rights. UP maintains that under the Term Sheet, use of the South End rights requires interchange in Kansas City. And since CPKC did not interchange in Kansas City, but rather used a single-line service, it cannot use the South End rights.

STB Petition

On August 1, 2023, KCS filed a petition with the STB (the "STB Petition") to enforce the merger conditions of the Term Sheet, i.e., confirm CPKC may continue to use the South End rights, even if it does not interchange in Kansas City. UP filed an opposition arguing the STB Petition raises a contract dispute (as opposed to a merger dispute) that lies within the purview of a court or arbitrator (as opposed to the STB). On September 20, 2023, the STB issued an order stating this was a "complex dispute . . . and that more substantial briefing [was] necessary. This case involves a dispute about the terms of a contract required and imposed by the agency as a condition to a merger, but the parties disagree as to whether the [STB] or a court is the appropriate entity to decide this case." *Union Pac. Corp, et al.—Control—MO-KS-TX R.R. Co., et al.*, FD 30800 (Sub-No. 22), at 3–4 (STB decision Sept. 18, 2023). The issue is fully briefed and ripe for review; the STB has not made a ruling to date.

In the interim, on August 23, 2023, UP filed its Complaint in this Court seeking a declaration that the Term Sheet's South End rights do not apply to "grain traffic originating north of Kansas City on CPKC that moves in single-line service via Kansas City." Compl. ¶ 30. UP is essentially asking the Court to resolve the issue currently before the STB.

## Discussion

Defendants argue (1) the Court lacks jurisdiction to issue declaratory relief because the STB has exclusive jurisdiction over this dispute; and (2) alternatively, the doctrine of primary jurisdiction suggests the STB should handle this dispute.[3]

### I. The STB has Exclusive Jurisdiction.

Defendants first argue the STB has exclusive jurisdiction since the Term Sheet provision in question necessarily involves a merger condition. UP agrees the STB has exclusive jurisdiction over merger disputes but argues the Term Sheet provision in question was not necessary to the CP-KCS merger and is instead a purely contractual dispute over which the Court has jurisdiction. According to UP, in order to address the anticompetitive concerns raised by the UP-MKT merger, the ICC dictated "necessary" terms be included in the Term Sheet. One such term was granting South End rights to move North End traffic. The ICC let the parties negotiate other "optional" terms, including whether those South End rights would apply to non-North End traffic. Accordingly, the Term Sheet included both "necessary" and "optional" terms agreed to by the parties. However, the ICC *only* adopted the "necessary" terms as a condition of the merger, not

---

[3] In the "legal standard" section of their brief, Defendants cite both Rule 12(b)(1) and 12(b)(6). While clearly exclusive jurisdiction falls under the gambit of Rule 12(b)(1), Defendants do not explain how application of the primary jurisdiction doctrine equates to failure to state a claim under Rule 12(b)(6). Some courts in this jurisdiction appear to analyze the doctrine under Rule 12(b)(6), *see Basin Elec. Power Coop. v. Tri-State Generation & Transmission Ass'n, Inc.*, No. 3:21-CV-220, 2022 WL 18622225, at *10 n.9 (D.N.D. Oct. 31, 2022), while other courts treat the doctrine as an independent and alternative ground for dismissal, *see City of Prescott v. Sw. Elec. Power Co.*, 438 F. Supp. 3d 943, 949 (W.D. Ark. 2020). Nonetheless, the Court finds the doctrine would apply if the Court had jurisdiction and dismisses the case accordingly.

the entire Term Sheet itself. Thus, the "optional" terms (which UP maintains are at issue here) were not necessary to the merger and are consequentially governed by contract law. This argument is unavailing.

Congress granted the STB exclusive authority to approve all mergers and acquisitions of rail carriers. 49 U.S.C. § 11321(a). Before approving a merger, the STB must consider whether the merger serves the public interest, § 11324(b)(2), and "whether the proposed transaction would have an adverse effect on competition among rail carriers in the affected region or in the national rail system," § 11324(b)(5). The STB "may impose conditions governing the transaction" as it sees fit to alleviate any concerns the merger raises. § 11324(c). Once the STB approves a merger, a carrier is "exempt from the antitrust laws and from all other law, including State and municipal law, as necessary to let [it] carry out the transaction[.]" § 11321(a). Courts interpret the STB's power broadly and give it exclusive jurisdiction to clarify the scope of its own orders when they are in question. *See, e.g.*, *Kansas City S. Ry. Co. v. BNSF Ry. Co.*, 970 F. Supp. 2d 542, 546–47 (W.D. La. 2013) (refusing to interpret STB merger decisions "to determine what rights, if any, those decisions granted"); *Ry. Lab. Execs.' Ass'n v. S. Pac. Transp. Co.*, 7 F.3d 902, 906 (9th Cir. 1993) (concluding the ICC "should have exclusive authority to clarify the scope of its own [merger] approval and the corresponding breadth of the section 11341(a) [now 11321(a)] exemption" where the parties disputed whether a proposal was "necessary to the implementation of an approved merger").

At the outset, the plain language of the 1988 Order does not suggest the ICC adopted only certain aspects of the Term Sheet as a condition of the merger.[4] *See* 1988 Order at *4 ("The

---

[4] While it appears the complete Term Sheet was not before the ICC at the time it approved the Term Sheet, that does not equate to a finding that only certain aspects of the Term Sheet were adopted as a condition of the merger itself. *See* 1988 Order at *4 (stating "UP indicates that the submission before us [the ICC] covers all material terms of its agreement with KCS, and it intends to submit full contract language as soon as it is completed," but going on to state

agreement negotiated by Union Pacific Corporation, its subsidiary railroads, and The Kansas City Southern Railway Company, and submitted July 25, 1988, is approved."). In fact, the Order's plain language indicates the opposite. For instance, the ICC states "to the extent any provisions of existing collective bargaining agreements, the Railway Labor Act, or other law would prevent KCS from manning its trackage rights trains with its own crews, *or would otherwise impede complete effectuation of the UP-KCS agreement*, they are overridden by virtue of 49 U.S.C. § 11341(a) [now § 11321(a)]." 1988 Order at *4 (emphasis added). That language, coupled with the following language also suggest the ICC anticipated ongoing jurisdiction to resolve future disputes arising under the Term Sheet: The ICC "expect[s] the parties to make every effort to resolve all future disputes under the agreement privately before requesting Commission involvement." *Id*. The Court is also hesitant to believe UP and KCS (competitors) would include "optional" terms in the Term Sheet that were unnecessary to obtain approval for the merger. And UP has not offered an explanation for this. *See* Dfs.' Reply at 6, ECF No. 24.

At bottom, in order to grant UP's request for relief, the Court would necessarily have to interpret the scope of the merger approval and corresponding breadth of § 11321(a), which it will not do. *See Ry. Lab. Execs.' Ass'n*, 7 F.3d at 906 ("If we held that parties could litigate in federal district court the scope of an approved merger and the corresponding breadth of the section 11341(a) [now 11321(a)], we would surely interfere with the ICC's ability to efficiently facilitate mergers."). The STB has exclusive jurisdiction over this matter.

Because the Court lacks subject matter jurisdiction, this case is dismissed without prejudice.

---

it "expect[s] the parties to make every effort to resolve all future disputes under the agreement privately before requesting Commission involvement.").
7

## II. The Doctrine of Primary Jurisdiction Applies.

Even if the Court had jurisdiction to hear this dispute, it would apply the doctrine of primary jurisdiction and dismiss the case.

"Primary jurisdiction is a common-law doctrine that is utilized to coordinate judicial and administrative decision making." *Access Telecomms. v. Sw. Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998). As stated by the Eighth Circuit Court of Appeals,

> The doctrine allows a district court to refer a matter to the appropriate administrative agency for a ruling in the first instance, even when the matter is initially cognizable by the district court. *See Iowa Beef Processors, Inc. v. Illinois Cent. Gulf R.R. Co.*, 685 F.2d 255, 259 (8th Cir. 1982). There exists no fixed formula for determining whether to apply the doctrine of primary jurisdiction. *See United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). Rather, in each case we consider whether the reasons for the doctrine are present and whether applying the doctrine will aid the purposes for which the doctrine was created. *See United States v. McDonnell Douglas Corp.*, 751 F.2d 220, 224 (8th Cir. 1984). We are always reluctant, however, to invoke the doctrine because added expense and undue delay may result. *See id*.

*Access Telecomms.*, 137 F.3d at 608. Courts commonly apply the doctrine for one of two reasons: (1) "to obtain the benefit of an agency's expertise and experience . . . in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion[;]" and (2) "to promote uniformity and consistency within the particular field of regulation." *Id.* (internal quotation marks omitted). After applying the doctrine, a court may either dismiss or stay the action. *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 913 (8th Cir. 2015).

Defendants argue the issue requires the STB's expertise, as it involves merger conditions, the evaluation of a complex regulatory history between the parties, and industry-specific policy. While UP frames the issue as a simple contractual dispute, it is basically asking this Court to intervene in the ongoing STB proceeding. For instance, if the Court were to grant UP's request for relief, the issues before the STB would be moot. The Court declines to make such a sweeping

8

determination. *See Basin Elec. Power Coop. v. Tri-State Generation & Transmission Ass'n, Inc.*, No. 3:21-CV-220, 2022 WL 18622225, at *10–11 (D.N.D. Oct. 31, 2022) (deferring primary jurisdiction to the agency where parallel proceedings were currently underway).

The Court defers jurisdiction to the STB for the reasons identified in Defendants' brief. This is a highly fact-intensive and "complex" question (in the words of the STB) that requires the STB's expertise. First, retaining jurisdiction and resolving the issue would require the Court to entangle itself in the regulatory and policy-making aspects of the railway industry, which is "not within the conventional experience of [the Court.]" *Access Telecomms.*, 137 F.3d at 608. Second, resolving the issue also risks creating inconsistency and contrary decisions within the industry. *Id.* Lastly, because the issue is already before the STB, the risks of added expense and undue delay in applying the doctrine is minimal. *See Basin Elec. Power Coop.*, 2022 WL 18622225, at *11. To the contrary, proceeding with this lawsuit while it is also pending before the STB would add unnecessary expense and waste both the parties' and the Court's time and resources. Thus, even if the Court had jurisdiction to hear this dispute, the doctrine of primary jurisdiction would apply.[5]

## Conclusion

For the aforementioned reasons, Defendants' motion to dismiss is GRANTED. UP's Complaint is dismissed without prejudice.

**IT IS SO ORDERED.**

Date:   February 21, 2024            /s/ Greg Kays
                                     GREG KAYS, JUDGE

---

[5] In reaching this conclusion, the Court would also dismiss this action without prejudice rather than stay it pending the STB's decision. *See Reiter v. Cooper*, 507 U.S. 258, 268–69 (1993) (explaining the Court "has discretion either to [stay the case and] retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice"). Dismissal would not prejudice either party here. If the STB ultimately decided it had jurisdiction over the issue, this lawsuit would be futile. On the other hand, if the STB determined this is a contractual dispute better left for the Court to decide, UP could re-file its Complaint with the Court. *See Engelhardt v. Consol. Rail Corp.*, 756 F.2d 1368, 1369 (2d Cir. 1985) (Staying the case "is not necessary where all the relief sought may be obtained before the [STB] or in a reinstituted proceeding." (citing *Zapp v. United Transp. Union*, 727 F.2d 617, 625 (7th Cir. 1984)).